The next matter on our calendar is Rohan Hamilton v. William Lee. May it please the court, my name is Lawrence Stern and I'm here on behalf of the petitioner-appellant Rohan Hamilton. Your honors, the fingerprint reports in this case, the only forensic evidence, so-called scientific evidence connecting the petitioner with the homicide, was introduced by a witness who did not make these reports. The reports were prepared for litigation. Well, wait, what you're talking about is specifically the fingerprint card that purports to be the fingerprints of Mr. Hamilton taken at his arrest, is that right? And the latent print development report. And the comparison of... No, the comparison, the witness who introduced these reports was the witness who made the comparison between the inked exemplar and the developed latent print from the duct tape. Who else would you have liked to heard from? I beg your pardon? Who else would you have liked to heard from, to hear from? The witness who took the fingerprints, allegedly took the inked exemplar fingerprints, did not testify. You're right. The person at the police station when your client was brought in and fingerprinted him, that's the person who should have testified? He testified, but he did not testify about taking the fingerprints nor identify his fingerprint card. And there was no objection by defense counsel to that practice? There was an objection to the introduction of the fingerprint card when the fingerprint comparison expert was asked to identify it for purposes... There's no dispute that the convocation claim was not preserved at trial, right? Oh, no, no. We submit that it was, Your Honor. It was a hearsay objection. It was a hearsay objection, not a confrontation objection. Well, he didn't say the word constitution, Your Honor, but... But there are cases saying that if you make a hearsay objection, but you don't object on confrontation grounds, then you have not preserved the confrontation objection. Unless you have given and made the gist of your objection known to the court. There's no mystery. I think every first-year law student knows that a hearsay objection implicates the cross-examination right in the Constitution. The judge here, once the objection was made, didn't even give the lawyer an opportunity to elaborate. If you assume for the moment that the objection was not preserved, then you'd be back in ineffective assistance, right? Very good, Judge. You have to show prejudice. Is there any claim that those weren't Mr. Hamilton's fingerprints? There's a claim that the latent fingerprint... But that's not what we're talking about. At the moment, we're talking about the fingerprint card at the time of the arrest. Is there any claim that those are not his authentic fingerprints? Well, we don't know as far as the... But wait, his hands haven't been amputated since then, right? That's right, but... It would be not a difficult matter to establish that this was shockingly prejudicial because the fingerprints that were compared to the latent print were actually somebody else's. If that were true, that would be very easily established, and then you'd have enormous prejudice from this. But I notice no one is making that argument. Well, Your Honor, Melendez teaches us that it's not the burden of the defendant to prove that something is not so. It's the burden of the prosecution to present witnesses that it is so, so that they can be cross-examined. They've done that already. They've presented their evidence. What more does the government have to do in this case? They didn't present their evidence by a witness who made the reports. And in addition to the inked fingerprint... Driver testified at trial. He had testified at the suppression hearing that he took the prints. No, Your Honor, I'm sorry. Driver testified at a pretrial hearing that he was not present at the arrest procedures. That's one of the claims of falsity about this print evidence. At the pretrial hearing, not brought out at trial, but only later on by the petitioner himself in his pro se filings, Driver said, I was not present at the arrest procedures. That's almost a quote, if not a near quote. Later at the trial, he testified that he arrested Petitioner, but he was not asked, did he take the fingerprints? He was not asked to identify the fingerprint card. I did not ask that at trial. I agree with you. My recollection of the record was that during the pretrial hearings, he had testified that he was responsible for gathering the data which you now contend there was no opportunity to confront at trial. I'll quote what he said. I was not present at the arrest procedures. At the pretrial hearing? Pretrial hearing, A392. But to say he wasn't present at the arrest procedures in the station is not necessarily to say that he did not gather the evidence on the scene that was then used to compare to what was taken at the station. You mean the duct tape from the victim's body? That's a separate issue. We're also claiming that the duct tape evidence, the fingerprint, the so-called latent print that was taken from the duct tape by a method, allegedly a method called superglue fuming, that evidence was not, didn't have anything to do with Driver. He didn't do anything with regard to the development of this latent. Am I under a misimpression? Are you saying Ms. Jean, who testified so extensively at the habeas hearing, did not testify at trial? She did. I thought she did, yes. So then what is Confrontation Clause problem with respect to the latent print? She was asked whether she could, at trial, she was asked whether she could identify the latent print that she developed from the duct tape. She said, I cannot without my original photograph. She was not shown her original photograph and the prosecutor dropped it. She did not identify the latent print that she developed at trial. But there was no original photograph, no such thing as an original photograph according to the habeas hearing. That's right, Your Honor. In fact, not only that, but there was no usable print on the duct tape. That was adduced at the habeas hearing. No, not so at all. As I read the habeas hearing, what happened is that there was testimony that they redid what Ms. Jean did in the first place. And everyone, including the judge and including your expert, said that they saw the, whatever it's called, the ridge detail. And then the question was, well, can you replicate the photography? And Ms. Jean said, yes, I could if the defense would let me. And the defense said, no, we won't. That she could flatten it out and replicate the photography, but was not permitted to do that during the testing phase. Am I wrong about that? I think in several respects, Judge. The duct tape, when it was examined by both experts pursuant to the judge's order that there be a hearing, testified that there was no usable print for comparison purposes on that duct tape. Right, unless it was then, and that was true from the beginning. It was only through the photographic method that the latent print was developed. First of all, at trial, there was no evidence. Nobody looked at the duct tape at the trial. That was part of our ineffective assistance of counsel argument and still is. Nobody looked at it. Because the defense at that point took it for granted. And maybe that was not what a defense lawyer, a good defense lawyer would have done. So now again, we are into the phase of prejudice. And the question is, what would have happened? What would we have learned if counsel had demanded that we follow all the steps? It seems to me that the district court in Habeas conducted that procedure and went through to try to learn what would have happened if the defense had made that objection or had had an expert. A deuce at the hearing was enough evidence to present the jury with reasonable doubt about the validity of this forensic evidence. Including no latent on the tip, on the duct tape. Including that the witness who... The witness said that what she did in the first place was to take the area that had the ridge detail that was visible to everybody and by photographic method develop a latent print. And then the question is, or at least a photograph of something that could be used. Is that not what she said? Originally. Originally. And then she said, and I could do that again. No, no, no, no. I'm sorry, Judge. No, no, no. Didn't she say she had the technology at her lab that would enable her to... The reason she couldn't do it again was it wasn't flattened out. It was crumpled up. No, no, no. That was a side distraction, diversion. The tape, when it was introduced in evidence at trial, was crumpled. The detective driver who took it out of the bags when he identified him at trial said, these are crumpled and they were crumpled when I got them from the medical examiner's office having been removed from the body. That same crumpling appeared when we opened the bags pursuant to the judge's order at the habeas hearing. They were still crumpled. And did the witness offer to flatten them out and conduct further tests? First of all, the original photograph of the alleged latent from the duct tape was taken from the crumpled tape. The tape was originally crumpled when it was removed from the body of the victim. And the latent that she developed... And there's testimony that it was developed, that the photograph was developed during the crumpledness? That's correct. That's correct, Your Honor. That's correct. The crumpling had nothing to do with whether or not the latent was developed from the tape or the photographs were taken by the witness from that. What is wrong with the district court's finding that the photographic method that was used to develop the latent image for comparison was scientifically sound? Because there was no original camera file of that photograph. But there was testimony that there's no such thing as an original camera file. There's only the file that there is. It is imprinted directly into the computer. No. I beg your pardon, Judge. There was testimony that there was an original camera... that there was an original file in the computer. But it lacked the indicators that it was the actual photograph from the camera that was taken because there was no information about the camera. Nobody has photographs these days, right? It's not like you take it to the lab and they put it in a pan of liquid and it comes out a photograph. It's fed in digitally to the computer. That's the photograph. Along with the model of the camera, the make of the camera, the serial number of the camera, the settings at which the photograph was taken, none of that information existed. No log was made, as experts testified, that a log should be kept of that information. Nothing like that. And the witness... Who should have been confronted? The witnesses who made the latent print. The witness who did the inked example art. These were the people who should have been before the court, but they were not even asked these questions. Instead, the examiner who merely compared the inked to the latent, had nothing more to do with the case, knew nothing about how these so-called originals were sourced, except in one instance she testified, or she didn't testify, but there was a report available to counsel, which he didn't use, in which she said the latent was obtained by the lift method. And the lift method is not superglue fuming. Superglue fuming, of course, is the procedure that you described, Judge, of inserting the object in a chamber, putting droplets of superglue on it, heating it so that there are fumes, the superglue adheres to the ridges, and almost permanently, according to all the experts, creates an actual visible latent. Lifting is when you put a piece of tape... Let me approach this in a slightly different way. Could you identify what it is that Judge Weinstein found that is clearly erroneous? Yes. It's clearly erroneous that the objection wasn't properly made. The objection to these hearsay evidence was, even though the lawyer didn't say the word constitution... With respect to the scientific evidence and the question of whether there was any prejudice from any failures on the part of counsel, what is it that was clearly erroneous about Judge Weinstein's finding about the development of the latent print? He said his finding after the Rule 60 hearing, his finding was the petitioner did not prove fraud. And that was erroneous because that wasn't our burden. We didn't have to prove fraud. We merely had to prove that there was sufficient evidence to establish a reasonable doubt that should have been presented to the jury. The parties agreed on that. The parties stated at the beginning of the hearing, they agreed that the issue was whether there was sufficient evidence not presented to the jury that could have created a reasonable doubt of the petitioner's guilt. All right. We'll stop here. You've reserved two minutes for rebuttal. We'll hear from the government. Good morning, Your Honor. Anthea Bruffy for the Respondent Appellee. First of all, the confrontation claim is mandatorily procedurally barred by the state court's application of New York's contemporaneous objection rule. Counsel said it was objected to, but it was on different grounds. It was objected to on hearsay ground. In New York law, that is insufficient to preserve a confrontation claim. This court has recognized that as well. Yes. Yes, Your Honor. Basically, this claim is procedurally barred. It was an independent, inadequate basis that the state court decision relied on. Therefore, this court could just stop there. However... Was there anything exorbitant about the state court's ruling? What did trial counsel say? Okay. So... You don't have to give me the exact words, but was there anything that suggested a violation of a federal constitutional right as opposed to a hearsay rule? No. No. He said, we don't know who did what when. That's what he said, basically. So, I don't think that that reasonably could suggest that he was saying confrontation clause. It sounds like an authenticity objection. Right. Exactly. So, first of all, the defendant... Sorry. Petitioner has not alleged... Well, he has alleged, but he hasn't proven cause for this procedural default. And he hasn't shown that there would be a substantial miscarriage of justice if this court does not reach this claim. And the reason for that is that as the state court also held, this claim is completely without merit. Because the fingerprint card, which is the item that is at issue here, is something, every time a defendant in New York is arrested, they're fingerprinted and this kind of card is made. It's not a formalized statement under Crawford. It's just part of a routine booking procedure. And, therefore, it's not a testimonial... That's arguably not testimonial. It's not a testimonial statement. So, if you put in an objection in the form of, we need to confront and cross-examine the person who took the fingerprints, there's no doubt that the prosecutor would have produced a cop who came in and said, I'm the guy who took the fingerprints. Exactly. That's why you need to have an objection, because if you don't, you're sandbagging the prosecution and the court. Absolutely right. And whether or not Detective Driver took these prints, and there is testimony at the state hearing, he said he arrested the defendant. And there may be some language about other people apprehending the defendant, but that doesn't mean that Detective Driver did not arrest this defendant. He said he did in a state court hearing. But whether he did or not, it doesn't matter, because this was not a testimonial statement. And as far as the ineffective assistance of counsel claim, the state court reached the merits of that claim and determined that counsel was not ineffective. And although the Strickland, which is the applicable federal case, was not expressly stated in the defendant's brief, the pro se defendant actually raised Strickland. And therefore . . . Let me ask you this. If we find there's a procedural bar, and then we have to examine the question of was counsel ineffective, and we take the state court's finding that it was not, that counsel was not ineffective, what . . . do we give edpedeference to that finding? Yes. Absolutely. Or is that a global review? No, it's edpedeference because it's an on the merits finding by the state court that counsel was not ineffective. And it's supported by the record. I mean, the two prongs of Strickland are basically performance. It's clear that this counsel was competent. He did what he could. He made suppression motions. He cross-examined the witnesses. He didn't do exactly what defense counsel would have had him do, but he was competent. And certainly doesn't make out the prejudice prong, because we have what Judge Weinstein described as weighty evidence. There were three witnesses who testified that this defendant basically admitted that he had killed this woman. So we don't have a weak case here. So I would . . . The only other thing I would like to draw this court's attention to is I don't want to go through every single claim that the defendant is making, but some of them I believe are not supported by the record and of the 60B hearing. And I understand that this court has access to the district court docket. Number 168 is the respondent's post-hearing memo where the hearing testimony is summarized, and many of those claims were addressed. So I would request that this court look at that document. And for all these reasons, we would request that this court affirm Judge Weinstein's denial of the habeas petition. Thank you. Thank you. Mr. Stern, you have reserved two minutes for rebuttal. Yes. In this case, whether or not the fingerprint card was testimonial . . . Whether fingerprint cards, that is, exemplar cards taken at the time of arrest, are testimonial or not testimonial. And there's no case that I know of in this court or in any other court that current fingerprint cards are not testimonial. In this case, the peculiar circumstances of the case rendered them prepared for litigation, which is the standard of Melendez. What is peculiar about this case as compared to any other case in which somebody is arrested and their fingerprints are taken? Routine procedure is what we . . . Beg your pardon? Routine procedure on arrest. It may be in some cases, but it certainly wasn't in this one. And I can tell you, give you the circumstances. On the night of the homicide, according to the police, his brother and the brother's wife and other people said that they heard him say he killed the woman. That's the night of the homicide. On that very same night, the detective spoke to the petitioner who agreed to meet him. Asked for a meeting with the detective. The petitioner did. On that same night, they spoke on the phone and they made a meeting place. And he didn't show up? No, the detective didn't show up. The detective didn't go. And in fact, they didn't arrest Mr. Hamilton until three months later in front of his father's house in Brooklyn. What were they doing during that three months? Well, one was they weren't examining the duct tape for his fingerprints. They didn't look for his fingerprints on file, which they had because he'd been arrested several times before. They lost or misplaced or don't know what happened to the duct tape for one week. There's contradictory testimony by Driver that he took the duct tape to the medical examiner's office on November 1st. This has nothing to do with whether he was fingerprinted as a routine matter. I thought you were going to say, but I also thought that, something like that, well, they took these prints specially in order to compare with the duct tape and that makes them testimonial. But it's clear that they took the known exemplars before they had anything on the duct tape, right? They waited three months to do both of them. They were taken within weeks of each other. The inked exemplar... The ink were taken first. First, when he was arrested? When he was arrested. No, they say... So what is special about the inked fingerprints in this case that is different than what happens in every other case? You don't take a guy's fingerprints when you don't have them. You take his fingerprints when you arrest him. They had them, Judge. They were on file from prior cases. Pardon? He means when they arrested him. Yes. They arrested him three months later. They waited to do the fingerprint comparison. They lost the duct tape. The duct tape was, for one week, was missing from the lab. Nobody knows where it was. What were they doing? Plus, you have the detective saying, I arrested him, I didn't arrest him, I didn't take the prints. And you have all the other information that indicates that what they were doing was preparing for the litigation when they took these so-called inked exemplars three months later after all this delay. How could they have arrested him at that time without taking his fingerprints? That would be very strange, right? Someone gets arrested, they have to have their fingerprints taken right then. They could have arrested him the night of the homicide and done that. Why didn't they? What were they doing? They were doing something with that duct tape. And the evidence is that it was a lift, not superglue fuming that made it. There was no usable print on the duct tape. All of this information could have been presented to a jury to show that there was a reasonable doubt. Thank you both. We'll reserve decision.